Leon Haber v. Commissioner.
Haber v. Commissioner
Docket No. 18679.
United States Tax Court
1949 Tax Ct. Memo LEXIS 33; 8 T.C.M. (CCH) 996; T.C.M. (RIA) 49269; November 9, 1949
*33 Louis Schonbrun, Esq., for the petitioner. Bernard D. Hathcock, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in petitioner's income tax for the calendar years 1944 and 1945 in the respective amounts of $20,043.66 and $25,047.93. The sole issue is the validity of an alleged partnership between husband and wife. Findings of Fact The petitioner, Leon Haber, is a resident of Tampa, Florida. He married Consuelo Haber in 1917. They have one son, Albert, who was born in 1921. The returns in question were filed with the collector for the Jacksonville district of Florida. Prior to his marriage, Leon Haber was a peddler selling merchandise from house to house. In 1918 he and his wife opened a retail store, handling ladies' ready-to-wear clothing such as lingerie, accessories, and furnishings. Consuelo contributed no capital. She ran this store while Leon continued to sell from house to house. In 1927, petitioner and his four brothers combined two stores, one of which was later closed, and formed a corporation entitled Haber Brothers, Incorporated. Originally, petitioner was issued 130 shares of stock. *34 Shortly thereafter, on July 30, 1927, he received a certificate for 100 shares in lieu of the 130 shares. On September 30, 1927, 99 of these shares were issued to Consuelo. Petitioner retained one share. The next year, Consuelo was made a director. She became president in 1936, which position she continued to occupy until 1939. In this year, the brothers were bought out and the corporation was dissolved. The corporation reported gross receipts of $51,783.39 in its From 1940 through 1943 the business operated as petitioner's sole proprietorship. Throughout the entire period in question Consuelo worked in the store on a salary. Petitioner and his wife drew what they needed from the salaries authorized to them and the rest was used in the business. In 1943, petitioner hired an accountant to prepare income tax returns. As a result of the examination, the accountant concluded that the husband and wife were partners, and recommended that a formal partnership agreement be drawn up, in order that petitioner might obtain the benefits flowing from that status. This conclusion was stated to be drawn from the wife's ownership of stock in the predecessor corporation upon which no payment in *35 liquidation had been made, from her participation in the business, and from statements of Haber and his wife to the effect that they both owned the business. Pursuant to this recommendation, a partnership agreement between the husband and wife, whereby she was to share in the profits and the losses of the business, was executed on January 2, 1944. This agreement provided, in part: "Whereas the said Consuelo Haber was formerly the holder of ninety-nine shares of stock in that certain corporation formerly known as 'Haber's Inc.', which was legally dissolved by the Secretary of State upon mutual agreement of the stockholders and directors, at which time said business and all its assets were sold to the said Leon A. Haber. "Whereas the said Consuelo Haber was, from the inception of said business, an active executive of said business, therefore in consideration of the interest and one-third of the shares of stock issued by said corporation for which the said Consuelo Haber has never received any money, the said Leon A. Haber does hereby convey and transfer one-third of said business to the said Consuelo Haber." On April 17, 1944, Consuelo, by judicial proceedings in Hillsborough County, *36 Florida, qualified and became licensed to be a "Free Dealer" entitling her to contract and be contracted with, to sue and be sued, and to do business the same as if she were not a married woman with common law disabilities of married women under the laws of the State of Florida. The partnership registered its name, showing the interests of the partners, under the "Fictitious Name Law" of Florida, which facts were duly advertised and recorded. Creditors and Dun and Bradstreet were informed, and insurance policies were changed so that they named both petitioner and his wife as the insured. As of the beginning of the year 1944 petitioner's wife was credited with $21,795.52 in her capital account on the books of the business. This fund was transferred from petitioner's capital account as a sale of one-third interest, although the wife transferred no cash. Under date of January 4, 1945, another partnership agreement was drawn to include the partners' son, who received a 10 per cent interest from petitioner as a gift upon his discharge from the Armed Forces. During 1944 and 1945, the partnership reported gross receipts of $454,746.08 and $469,462.65, respectively. The store which had *37 been improved virtually every year had expanded to three floors and a balcony connected by an elevator. There were ten departments and approximately forty employees and three managers. The three Habers were in complete charge. The office was run by petitioner, with the assistance of bookkeepers and auditors. The wife devoted all of her time to the business and was in sole charge of the business for four months when the decedent was ill, during which time she signed all of the checks issued to pay the bills. She was the buyer of lingerie. She helped with the buying and selling. Petitioner had the final approval. She was of Latin-American descent and had a large following in the city among those of similar background. She called on prospective customers, helped decorate the show-windows, and managed the girls in the store, hiring and firing them. She handled complaints. From 1918 throughout the years in question, she was similarly active in the business. Petitioner and wife intended to, and did in reality, join together for the purpose of conducting the business as a partnership in 1944 and 1945. In 1946, the business was again incorporated, with petitioner, his wife, and son owning *38 the total stock issued. Opinion KERN, Judge: Our problem is to determine the correctness of respondent's action in refusing to recognize the validity for income tax purposes of the participation of petitioner's wife as a partner in a retail business conducted under the name of "Haber's" during 1944 and 1945. It should be noted that there is no issue relating to the validity of the son's participation in 1945. Respondent urges the absence of a "reality of consent * * * to do business as partners in a legal (not matrimonial) sense, and that the sole purpose of resorting to the partnership form was to reallocate income between members of the family with tax advantage in view." And that since there was no new capital, no new services, nor any change in the business, there can not be a valid partnership. We are not concerned with those years prior to the formal declaration of the partnership status. Viewing the matter as of 1944 and 1945, we find a husband and wife with declared legal interests, both devoting their full time to the business on a managerial level. They are operating as partners in the full sense of the term. That petitioner may have given his wife whatever interest *39 she had on or about the time of the creation of the partnership in January 1944, need not, of itself, vitiate the partnership, (See Edward A. Theurkauf, 13 T.C. - (October 7, 1949), so that it is not necessary for us to attempt to ascertain whether she actually had any real interest in the earlier corporation, or, there being no gift tax question before us, to consider whether petitioner made a gift of the partnership interest to his wife at that time. What we do conclude, impelled by the entire record and the controlling authorities, [1] is that as of 1944 and 1945 petitioner and his wife really and truly intended to and did join together in the conduct of the business as partners.
Respondent contends that the wife's services are no different than they had theretofore been, but the ready reply is that they are nonetheless rendered in the taxable years and are of such consequence as to support the partnership status provided the parties intended such status to exist. We are not able to say that a rearrangement *40 of business interests under these circumstances is not bona fide or without business purpose. While the wife may not have individually withdrawn and spent all of her derivative portion of the partnership income during the years involved, its use in the business, in a large extent owned and actually controlled by her, inured to her benefit and was necessarily reflected in her capital or drawing account. Cf. H. V. Funai, 13 T.C. - (November 2, 1949). There being items in the notice of deficiency which petitioner does not contest, Decision will be entered under Rule 50. Footnotes
1. ; ; , (6-27-49).↩